IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LOUBNA HIZOUNI** : | |
| : | **CIVIL ACTION** |
| v. : | |
| : | **NO. 25-3534** |
| **PROGRESSIVE ADVANCED** : | |
| **INSURANCE COMPANY** : | |

**MEMORANDUM**

I.   Introduction

Before this Court are Plaintiff's Motion to Strike Defendant's Answer (the "Motion" at Dkt. #11) and the responses of both parties to this Court's Order to Show Cause regarding the amount in controversy (Dkt. #10, 12). The Court will address each, in turn.

II.   The Motion to Strike

Plaintiff Lobuna Hizouni ("Plaintiff") asks this Court to strike portions of the Answer of Defendant Progressive Advance Insurance Company ("Defendant") because, she claims, some of Defendant's affirmative defenses "are not well-grounded in law." (Dkt. #11 at 5). While Plaintiff makes reference to the requirements of Federal Rule of Civil Procedure 11, based upon Plaintiff's proposed order and the fact that she has not taken the specific steps required under Rule 11, this Court understands Plaintiff's Motion to only be brought pursuant to Rule 12(f). Defendant responds that its affirmative defenses all appropriately put Plaintiff on notice of Defendant's possible defenses and are all at least feasibly related to this case.

Rule 12 of the Federal Rules permits the Court to strike from any pleading an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f).

1

Affirmative defenses should not be struck under Rule 12(f) unless their inapplicability is "clearly apparent." *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986). Judge Pappert has recently noted, too, that defendants are given wide berth when it comes to pleading affirmative defenses and are allowed to include any affirmative defense which is "likely to apply or often does apply in similar cases." *Moore v. Walton,* No. CV 14-3873, 2025 WL 2024483, at *3 (E.D. Pa. July 18, 2025) (Pappert, J.). This makes sense, as affirmative defenses are not subject to the heightened pleading standards of *Twombly* and *Iqbal*. *See Tyco Fire Prods. LP v. Victaulic Co.,* 777 F. Supp. 2d 893, 899 (E.D. Pa. 2011).

While this Court will not discuss at length each affirmative defense which Plaintiff seeks to exclude (just as Plaintiff herself elected not to in her Motion), at this early stage, each affirmative defense pleaded by Defendant seems appropriate and warranted, and most certainly not "insufficient" in a way that is "clearly apparent." *See Cipollone*, 789 F.2d at 188. It is this Court's typical practice to discuss affirmative defenses at the Rule 16 Conference upon request, and to cull affirmative defenses once and for all during the Court's Final Pretrial Conference. While this Court would be open to considering a motion to strike affirmative defenses where the affirmative defenses pleaded are excessive and implausible, that simply is not the case here.

Some of the affirmative defenses about which Plaintiff complains may actually be ordinary defenses to liability which need not be separately pleaded. At worst, those inclusions are unnecessary surplusage. But given the possibility of waiving of an affirmative defense by not pleading it now, Defendant's belt-and-suspenders approach is understandable. Further, this Court can see no conceivable prejudice done to Plaintiff by not striking the defenses. An appropriate order follows.

**III.     The Order to Show Cause**

This Court now writes briefly to address the responses to its Order to Show Cause, which requested briefing regarding whether this case meets the requisite amount in controversy so as to permit diversity jurisdiction. This Court is satisfied that the amount in controversy is at least presumptively met based upon Plaintiff's interest calculations and citations to Pennsylvania law which permit punitive damages in certain bad faith cases.[1]

This Court would be remiss if it did not clarify one category of damages argued by Plaintiff upon which this threshold determination did *not* rest. Both the Complaint and Plaintiff's response to this Court's order suggest that Plaintiff believes she has the potential to recover the difference between the jury's $650,000 award and the $250,000 final verdict which was molded to policy limits. This Court found no legal support for this contention in Plaintiff's brief, and, having conducted its own legal research into the subject, similarly found no support for that category of damages in Pennsylvania law. While that delta may well be relevant as to the question of punitive damages, this Court is unaware of any legal theory of damages which would suggest that plaintiff was harmed in the amount of $400,000 by way of Defendant's alleged bad faith refusal to tender policy limits. Assuming Plaintiff was able to show Defendant acted in bad faith, the most she would have been entitled to have tendered to her was the $250,000 she ultimately received. This Court can imagine no way in which Progressive's alleged bad faith somehow deprived Plaintiff of $400,000 more than the policy limits to which she agreed. Plaintiff is reminded that causation must be proven, to the extent she views these damages as compensatory.

Plaintiff has plausibly alleged she has been harmed by that refusal, in terms of interest, additional litigation expenses, and additional attorney's fees, and may well be entitled to punitive

---

[1] While Defendant does not concede the accuracy of Plaintiff's allegations or calculations, Defendant agrees that the amount in controversy exceeds $75,000.

damages if she prevails. But in presumptively finding subject matter jurisdiction justified, this Court does not presently credit Plaintiff's allegations of harm in the amount of $400,000 as part of its analysis on the amount in controversy. The Court will thoughtfully consider arguments on the issue *de novo* after full briefing by both Parties if presented to it by way of a motion at a later date.

DATED: September 29, 2025             BY THE COURT:

_____
GAIL WEILHEIMER         J